**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JOSE FREDY AYALA,

                        Plaintiff,                    **MEMORANDUM**
                                                                        **AND ORDER**
          - against -

                                                                       08-CV-1102 (NGG) (JO)

FRESH DIRECT, LLC.,

                        Defendant.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

By order dated February 4, 2009, I directed defendant Fresh Direct, LLC ("Fresh Direct") to show cause why I should not order it to pay the reasonable expenses, including attorney's fees, caused by its failure to provide timely answers from two witnesses in its employ, and to cooperate in the rescheduling of the deposition of a third party that it previously employed. For the reasons set forth below, I decline to order such relief.

I.      <u>Background</u>

In this employment discrimination action, plaintiff Jose Fredy Ayala ("Ayala") alleges, among other things, that his erstwhile supervisor Craig Kominiak ("Kominiak") unlawfully discriminated against him during the period in which both men were employed by Fresh Direct. As part of the discovery process, Fresh Direct produced a copy of Kominiak's personnel file. Various documents which would typically be present in such a file, and indeed had been present in the personnel files of other Fresh Direct employees already produced, were missing from Kominiak's file as produced. *See* Docket Entry ("DE") 22 at 1-2. Ayala sought discovery relief, and I directed the parties to take discovery into the disposition of the apparently missing portions of Kominiak's personnel file. *See* DE 25.

Pursuant to that order, Ayala subsequently took depositions of James J. Moore ("Moore") and Anthony Onesto ("Onesto"), Fresh Direct's General Counsel and Director of Human Resources, respectively. DE 26 at 2-3. Moore invoked the attorney-client privilege in answer to questions concerning what steps he took to locate the missing documents. DE 26 Ex. 3 (excerpts of Moore's deposition) at 117-19, 122-23, 136.[1] Moore also testified that the personnel files of employees no longer working for Fresh Direct were scanned into an electronic system, after which the hard copies were destroyed. DE 26 Ex. 8 (excerpts of Moore's deposition) at 50-51, 75. Onesto testified, however, that following scanning such files were sent to an offsite storage facility. DE 26 Ex.10 (excerpts of Onesto's deposition) at 89-91. Onesto was also directed not to answer any questions that might divulge privileged conversations between himself and Moore. DE 26 Ex. 11 (excerpts of Onesto's deposition) at 69-75.

At Moore's deposition, as part of a discussion of Moore's professional experience, Ayala's counsel asked Moore, "In what states are you registered as an attorney?" DE 26 Ex. 5 (Moore Deposition at 26). Moore answered, "I don't currently keep any active bar memberships. I'm an inactive member of the Virginia and D.C. bars." *Id*. As Ayala subsequently determined, that response was partially untrue. The membership director of the Virginia State Bar confirmed

---

[1] Fresh Direct has consistently taken the position that Moore actually did respond to the inquiry, and cites answers in which Moore described his general practices. The deposition transcript makes clear that Moore repeatedly couched his answers in terms in terms of general practices, and never directly responded to Ayala's questions about his actions specifically with respect to Kominiak's file. Although some of those answers referred to the search for Kominiak's file as part of his general practices, Moore consistently deflected questions that asked him to address with specificity his actions regarding Kominiak's file. Moore's answers, and Fresh Direct's arguments in defending those answers as appropriately responsive, are pure sophistry. If Moore had no recollection specific to the his handling or the disposition of Kominiak's file, he could easily have said so, but a fair reading of the deposition transcript shows that he strove mightily, and thus far successfully, to avoid providing any such response.

that Moore "is currently an associate (inactive) member" of the Virginia bar, but also noted that he is not in good standing, his license having been suspended in 1999 for non-payment of dues and then forfeited in 2002 for the same reason. *Id*. Ex. 6. Records of the District of Columbia bar show that Moore's status is "suspended" for non-payment of dues – a status the records themselves demonstrate to be distinct from "inactive." *Id*. Ex. 7 (print-out of on-line public records of District of Columbia Bar). Based on its research, Ayala asserted that Moore is not licensed to practice law anywhere, and that his invocation of attorney-client privilege on behalf of Fresh Direct was therefore improper.

While Ayala's counsel were seeking the missing contents of Kominiak's personnel file, they also sought to secure Kominiak's deposition testimony. Ayala first scheduled the deposition for January 8, 2009, but then adjourned it in an effort to obtain the missing documents before questioning him – an effort that was frustrated by Fresh Direct's assertion of attorney-client privilege. *See* DE 26 at 3. On January 26, 2009, with the discovery cut-off of February 6, 2009, looming, Ayala noticed the deposition for February 4, 2009. The next day, Fresh Direct's counsel – who had agreed to arrange Kominiak's appearance and had accepted a notice of deposition for his appearance – advised Ayala's counsel that they would need to check with Kominiak regarding his schedule.[2] The day after that – January 28, 2009 – Fresh Direct's counsel reported that Kominiak would be unavailable for the entire week. DE 26 at 3. Asked to propose alternate dates for the deposition, Fresh Direct's counsel reportedly responded as follows: "We do not have a proposed alternative discovery date because Mr. Kominiak has

---

[2] Although Fresh Direct is no longer Kominiak's employer, it is plainly coordinating its efforts with him. In addition to accepting a notice for Kominiak's deposition, Fresh Direct's counsel also had Kominiak attend Ayala's deposition. DE 26 at 4 n.2; DE 28 at 3 n.2.

3

advised that he is not available next week, and fact discovery closes at the end of that week." *Id*. at 4. Ayala's counsel then requested an extension of the discovery period, and Fresh Direct's counsel did not respond. *Id*.

On January 30, 2009, Ayala reported the foregoing facts and sought an extension of the discovery deadline as well as the imposition of a sanction on Fresh Direct from within the range of options set forth in Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(iii). DE 26. Later that day, apparently seeking to mitigate the damage caused by Fresh Direct's intransigence and complete discovery as best he could, Ayala reported that he had succeeded in serving a subpoena on Kominiak requiring his appearance at a deposition on February 4, 2009 – the same date for which the deposition had previously been noticed. DE 27.

On February 4, 2009, Ayala's counsel appeared for Kominiak's deposition. Kominiak did not appear and neither did Fresh Direct's counsel, nor did either Kominiak or Fresh Direct seek to quash the subpoena as unduly burdensome. On the same date, Fresh Direct filed its response to Ayala's motion for discovery-related relief. With respect to Ayala's complaint about the assertion of privilege in refusing to allow Moore and Onesto to answer questions about efforts made to produce Kominiak's file, it withdrew the assertion of privilege and agreed to have Moore and Onesto appear for continued questioning. DE 28 at 2. With respect to Kominiak's deposition, Fresh Direct laid the blame for the delay at Ayala's door and declined to agree to the extension of discovery. *Id*.

> I resolved Ayala's motion with the following order:
>
> The plaintiff's motion for discovery relief is granted. The defendants shall produce Mr. Moore and Mr. Onesto for further deposition to answer questions that they previously refused to answer and such further questions as may be reasonably calculated to lead to the discovery of admissible evidence. I will

> adjourn the remaining pretrial deadlines by four weeks to accommodate the foregoing discovery as well as the deposition of Mr. Kominiak and any other discovery request reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Rule 37(b)(2)(C), I direct the defendant to show cause no later than February 11, 2009, why I should not order it to pay the reasonable expenses, including attorney's fees, caused by its failure to provide timely answers from Messrs. Moore and Onesto and to cooperate in the rescheduling of Mr. Kominiak's deposition. The foregoing relief is without prejudice to a renewed request for additional sanctions pursuant to Rule 37(b)(2)(A) if the defendant continues to impede the fair litigation of this case.

Order Dated February 4, 2009. Fresh Direct filed a written response to the order to show cause on February 12, 2009, DE 31, Ayala replied on the same date, DE 32, and Fresh Direct submitted a sur-response on February 18, 2009. DE 33. In the latter sur-reply, Fresh Direct reported that it had found Kominiak's original personnel file: having previously stated that the file had been shredded, Fresh Direct now reported that it had decided to find out if what it had said was true by actually looking for the file in the storage facility where such records are maintained. Having finally taken the trouble to look for the document, Fresh Direct found it and agreed to disclose it. *Id*. at 3-4. I heard argument on the matter on February 23, 2009, and reserved decision. *See* DE 34. At that argument, Fresh Direct acknowledged that it is in the process of reviewing stored files to determine if they contain additional materials responsive to Ayala's discovery requests that it has thus far failed to produce.

II. Discussion

    A. Fresh Direct's Assertion Of Privilege

Fresh Direct withdrew its assertion of privilege, and agreed to have Moore and Onesto answer Ayala's inquiry, but it did so only after Ayala filed his motion. Normally, that would trigger the cost shifting provision of Rule 37, as Ayala should not have had to engage in motion practice to obtain information that Fresh Direct will now, however grudgingly, voluntarily

provide. *See* Fed. R. Civ. P. 37(a)(5)(A). However, before filing the motion, Ayala's counsel did not explicitly contest the propriety of the assertions of privilege or ask Fresh Direct to withdraw them voluntarily. Fresh Direct's counsel took the position at oral argument that had Ayala's counsel made such a request, she would have acceded to it. Such cooperativeness has been sorely lacking in this case, and counsel's statement seems at odds with both the intransigence Fresh Direct has shown in other respects and the strenuous argument that Fresh Direct made about the merits of its position – before abandoning it – in responding to the order to show cause.[3] It is therefore hardly surprising that Ayala's counsel might have believed it would be futile to ask Fresh Direct to reconsider its position without the specter of a court order. Nevertheless, Ayala's counsel's failure to do so precludes an award of costs. *See* Fed. R. Civ. P. 37(a)(5)(A)(i) (prohibiting an order of payment if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action").

  B. <u>Fresh Direct's Failure To Consent To The Extension Of Time</u>

To the extent that my order of February 4, 2009, suggested the possibility of awarding costs arising solely arising from Ayala's request to extend the discovery date to accommodate it efforts to schedule Kominiak's deposition, it was improvident, and I now decline to enter such an order. With or without Fresh Direct's intransigence, Ayala would have had to seek permission to

---

[3] As a result of Fresh Direct's decision in this regard, I had no occasion to rule on the propriety of Moore's assertion of privilege in my order of February 4, 2009, and I do not do so here. Nor do I express any opinion as to whether Moore may properly act as Fresh Direct's counsel while lacking a valid license to practice law in any jurisdiction, or the potential consequences for either Moore or Fresh Direct if Moore's service as General Counsel is inconsistent with applicable law and rules concerning the licensing requirement for the practice of law.

6

extend the deadline, and his request was granted. Accordingly, Fresh Direct's failure to consent to the request did not impose any burden on Ayala that Ayala would not otherwise have borne.

It is of course possible that Ayala would not have had to go to the trouble of seeking an extension in the first place if Kominiak had complied with the subpoena requiring his appearance on February 4, 2009. As to the latter possibility, Ayala's counsel contended at oral argument that Fresh Direct should be held responsible for Kominiak's failure to attend the deposition as required. Fresh Direct's counsel conceded that she spoke to Kominiak in advance of the scheduled date, but that it was not her place to advise him that he was required by a court order to attend, and she denied telling him that his claimed unavailability due to a work conflict was a sufficient basis for him to boycott the proceeding.

Whatever the explanation for Kominiak's failure to attend the deposition, I need not resolve the matter now. Ayala made the request to extend the discovery deadline before serving the subpoena on Kominiak, and therefore any costs arising from the fact that Kominiak defied the subpoena cannot be attributed to Fresh Direct's refusal to consent to the extension. Of course, Ayala remains free to seek contempt sanctions from Kominiak, and if he does so, I will of course consider any explanation Kominiak might offer for his defiance of a court order. On the existing record, however, I am constrained to accept the representation that Fresh Direct's counsel did not advise or encourage Kominiak not to attend the deposition.[4]

---

[4] It remains unclear why Fresh Direct's counsel felt sufficiently sure that Kominiak would defy a court order that she did not attend the deposition herself, to guard against the possibility that Kominiak would ultimately realize that he had no lawful alternative and then be deposed in her absence. It seems surprising that reasonable counsel would take such a chance with a client's interests based on nothing more than Kominiak's stated preference to go to work rather than comply with a subpoena. I need not resolve that question of fact to dispose of the instant issue.

My decision not to require Fresh Direct to reimburse Ayala for the specific costs at issue should not be misinterpreted as an endorsement of Fresh Direct's conduct in this case. To the contrary, Fresh Direct has consistently frustrated attempts to ensure that both sides have a fair chance to obtain information about the merits of Ayala's claims to which both parties are entitled. Moreover, in denying an award of costs arising from the two discrete matters addressed in Ayala's motion for discovery relief, I have no occasion to consider whether Fresh Direct should bear other costs. Specifically, Ayala has incurred costs in appearing for Kominiak's deposition on February 4, 2009, and will incur future costs in conducting discovery that would have been completed already but for Fresh Direct's failure to discharge its discovery obligations. To some extent, the costs that lie ahead would have been incurred in any event; but to the extent that Fresh Direct's conduct has increased those costs, Ayala remains free to seek appropriate relief.

**SO ORDERED.**

Dated: Brooklyn, New York
February 24, 2009

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge